UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR MASRY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>LOWE'S COMPANIES, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-00750-CRB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

## I.  INTRODUCTION

Plaintiffs Omar Masry and Elliot Mass bring this class action on behalf of themselves and others similarly situated against Lowe's Companies and Lowe's Home Centers ("Defendants"), for prohibiting customers from posting negative reviews. Plaintiffs allege that by including a non-disparagement clause in the Lowes.com website terms of use, Defendants violate California consumer protection laws—in particular, one known as the California "Yelp" law which aims to protect consumer speech about goods and services that other consumers may consider purchasing.

Defendants move to dismiss the case for lack of personal jurisdiction and failure to state a claim, or in the alternative, to transfer venue. The Court finds the matter suitable for disposition on the papers under Civil Local Rule 7-1(b). For the reasons explained herein, the Court GRANTS Defendants' motion to dismiss for failure to state a claim.

## II.  BACKGROUND

Plaintiffs allege the following. Plaintiffs and class members are residents of California who either purchased goods or services on Lowes.com, or used the Lowes.com "Sites"—the website, mobile app, advertisements, and APIs or plugins. Complaint ¶¶ 1,

46. Defendants operate business in California and make sales through the Sites. Id. ¶ 13. Defendants' website includes a Terms and Conditions of Use that requires users to agree they will not post any content to the Sites that "defame[s], misrepresent[s], or contain[s] disparaging remarks about Lowe's Organization or its products, or other people, products, services, or companies. . . ." Id. ¶ 6. Defendants also threaten to suspend or terminate any user's right to use the Sites at their discretion if a statement is harmful to their interests. Id. Defendants impose these restrictions as part of their business strategy, which involves maintaining a "positive public image" and popularity to generate significant revenues and profits. Id. ¶¶ 8, 17.

Plaintiffs allege that Defendants' conduct violates California Civil Code § 1670.8 (California's "Yelp" law) and California Business & Professions Code § 17200 (California's unfair competition law). Id. ¶ 22. Plaintiffs seek damages, restitution, and injunctive relief under both statutes. Id. ¶ 2.

Defendants move to dismiss for lack of personal jurisdiction and failure to state a claim, or in the alternative, to transfer venue. Mot. (dkt. 19).

### III. REQUESTS FOR JUDICIAL NOTICE

Defendants ask the Court to take judicial notice of (1) the terms of use as published on Defendant's website Lowes.com, and (2) Defendants' profiles on the North Carolina Secretary of State's website. See Defendants' RJN (dkt.19-1) at 2. Plaintiffs request judicial notice of (1) the same terms of use, (2) the contents of the Lowes.com webpage listing stores in California, (3) a complaint from 2002 and answer from 2019 filed by Lowe's in California state court, (4) California Civil Code § 1670.8, and (5) the legislative history of § 1670.8 in the Assembly Committee Hearing, April 22, 2014 regarding AB 2365, Synopsis. See Plaintiffs' RJN (dkt. 23).

"Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Websites and their contents may be

subject to judicial notice. See Threshold Enters. Ltd. v. Pressed Juicery, Inc., 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); Paralyzed Veterans of Am. v. McPherson, No. C 06-4670, 2008 WL 4183981, *5 (N.D. Cal. Sept. 9, 2008) ("[I]nformation on government agency websites . . . have often been treated as proper subjects for judicial notice.").

Because these documents are matters of public record, there are no issues of authenticity, and neither party opposes the requests for judicial notice, the Court concludes that judicial notice is appropriate. Therefore, the Court GRANTS both Defendants' and Plaintiffs' Requests for Judicial Notice.

## IV. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Under Rule 12(b)(2), a court must dismiss an action if it does not have personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "[T]he plaintiff bears the burden of establishing that jurisdiction is proper." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. In addition, "[u]ncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp., 905 F.3d 597, 602 (9th Cir. 2018).

### B. Motion to Transfer Pursuant to the Forum Selection Clause

Federal law governs the analysis of a forum selection clause. Jones v. GNC Franchising, Inc., 211 F.3d 496, 497 (9th Cir. 2000); see also Clark-Alonso v. Southwest Airlines Co., 440 F. Supp. 1089, 1094 (N.D. Cal. 2020) ("Federal contract law applies to interpret the scope of a forum-selection clause even in diversity actions." (internal quotations omitted)). If the Court determines that a dispute is covered by a forum-selection clause, the Court must enforce it unless it is shown to be unreasonable under the circumstances. Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).

### C. Motion to Dismiss for Failure to State a Claim

A complaint may be dismissed for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend "is not to be granted automatically." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013). A court has discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

## V. DISCUSSION

### 1. 12(b)(2) Lack of Personal Jurisdiction

Defendants move to dismiss for lack of personal jurisdiction. Mot. at 3. A federal district court's jurisdiction over a defendant is the same as "the jurisdiction of a court of

4

general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). California "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see also Cal. Civ. Proc. Code § 410.10. Under the Due Process Clause, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316–17 (1945)). This inquiry "has long focused on the nature and extent of 'the defendant's relationship with the forum state.'" Id. (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 582 U.S. 255, 262 (2017)). And that "focus" has resulted in "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Id.

### a. General Jurisdiction

General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are "substantial" or "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984). For a corporation, the paradigm forum for the exercise of general jurisdiction is the one in which the corporation is "fairly regarded as home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). "[T]he inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" Daimler, 571 U.S. at 138-39 (quoting Goodyear, 564 U.S. at 919).

Here, Plaintiffs have not alleged facts showing general jurisdiction. They assert that Lowe's has locations in more than 100 cities in California and advertises its products to residents of California. See Plaintiffs' RJN Ex. A. They also point to Defendants' litigation in California courts. Opp. (dkt. 22) at 7. However, these contacts are not

5

sufficient to establish that Defendants, who are incorporated in North Carolina and have their principal place of business in North Carolina, are so continuous and systematic as to render Defendants essentially at home in California.  Cf. Pelton v. Lowe's Home Centers, LLC, 2021 U.S. Dist. LEXIS 265484 at *11 (M.D. Fla. 2021) (holding that Lowe's extensive retail presence in Florida and the activity alleged is not so continuous and systematic to make Lowe's "at home" in Florida).

### b. Specific Jurisdiction

Specific jurisdiction "covers defendants less intimately connected with a State" but "only as to a narrower class of claims." Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1024 (2021).  Whereas general jurisdiction depends on the relationship between the defendant and the forum, specific jurisdiction depends on the relationship between "the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)).

With those principles in mind, the Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction":

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Lake v. Lake, 817. F.2d 1416, 1421 (9th Cir. 1987)).[1]  The party asserting jurisdiction

---

[1] The parties dispute whether a purposeful direction or a purposeful availment approach applies here.  See Mot. at 11; Opp. at 9.  The Ninth Circuit has held that there is "no need to adhere to an iron-clad doctrinal dichotomy to analyze specific jurisdiction" and that courts should instead "comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims." Davis v. Cranfield Aerospace Sols., Ltd., 71 F.4th

bears the burden of satisfying the first two prongs of the test. Id. (citing Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990)). If that party fails to satisfy either prong, personal jurisdiction is not established. Id. If that party satisfies both prongs, the burden then shifts to the party challenging jurisdiction, who must "present a compelling case" that the exercise of jurisdiction would not be reasonable. Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

Starting with the first prong. The Ninth Circuit has held that a defendant's internet presence within the forum state may justify the exercise of specific jurisdiction depending on the "nature and quality of the commercial activity that an entity conducts over the Internet." Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418–19 (9th Cir. 1997). A passive website site alone is not sufficient to justify the exercise of personal jurisdiction; rather, the "operator must have both actively appealed to and profited from an audience in that forum." Will Co., Ltd. v. Lee, 47 F.4th 917 (9th Cir. 2022); see also Cybersell, Inc. 130 F.3d at 418 ("However, so far as we are aware, no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state.").

In Mavrix Photo Inc., v. Brand Technologies, Inc., 647 F.3d 1218 (9th Cir. 2011), Mavrix Photo, a photography agency that licensed candid shots of celebrities to publications, sued Brand, who operated a celebrity gossip website, for copyright infringement. Id. at 1221–24. The court held that Brand was subject to specific jurisdiction in California given Brand's website combined with commercial activity targeted at California consumers, such as stories and advertisements about California. Id. at 1231. It also profited from California consumers through advertising revenue. Id. The

---

1154, 1162 (9th Cir. 2023). However, to the extent the Court relies on an approach, the purposeful availment approach is appropriate because Plaintiffs' claims—which are based on the non-disparagement clause in Defendants' terms of use—"sound[] in contract," rather than tort. See id. Therefore, the Court considers the Defendants' "'entire course of dealing' with the forum state—'not solely the particular contract'" giving rise to Plaintiffs' claims. Id. at 1163 (citation omitted).

court further reasoned, "a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state." Mavrix Photo, 647 F.3d at1231.

Here, the allegations of Defendants' internet presence within the forum state of California satisfy the first prong of the specific jurisdiction test. Plaintiffs allege that Defendants conduct "substantial business" with California consumers and that its website terms of use are "aimed" at California consumers' right to free speech. Complaint ¶¶ 6–7. Defendants are "in the business of advertising, promoting, marketing, selling, and distributing consumer goods or services through the Sites, all of which are targeted to, and accessible by, the citizenry of California." Id. at ¶ 15. For example, an advertisement on Lowes.com shows information about the Lowe's East San Jose store, located in California. Plaintiffs' RJN Ex. A. Defendants also operate more than a hundred retail locations in California. See Plaintiffs' RJN, Ex. B. In addition, like the website in Mavrix Photo, Lowes.com has national viewership and appeals to and profits from a California audience. See also Will Co., Ltd. v. Lee, 47 F.4th 917 (9th Cir. 2022). Therefore, Defendants have "expressly aimed" at California. See Mavrix, 647 F.3d at 1231.

Plaintiffs have also sufficiently alleged that their claims arise out of Defendants' forum-related activities. Plaintiffs are California residents who have completed sales transactions on Lowes.com or otherwise accessed the Sites. Complaint ¶¶ 1. Because Defendants do not "present a compelling case" for why personal jurisdiction would not be reasonable here—especially given the extent of Defendants contacts with the state—the Court concludes that specific personal jurisdiction is established.

The Court therefore DENIES the motion to dismiss for lack of personal jurisdiction.

### c. Venue

In the alternative, Defendants move to transfer the case to North Carolina pursuant to the Lowes.com terms of use, which contains a forum-selection clause. Mot. at 8. The terms state:

> By using the Site, you consent to the exclusive jurisdiction and

> venue of the courts, tribunals, agencies and other dispute resolution organizations in Charlotte, North Carolina" for any and all disputes "arising out of, relating to or concerning this agreement, the Site and your use thereof…"

Terms and Conditions of Use at 5. Plaintiffs contend that they did not agree to the forum-selection clause, nor was it reasonably communicated such that they would be aware of it. Opp. at 11.

Contract formation is governed by state law. Cordes v. Uber Tech., 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017). "In California, 'mutual assent [by word or conduct] is the key to contract formation.'" Lopez v. Terra's Kitchen, LLC, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018) (quoting Cordes, 228 F. Supp. 3d at 988). The Ninth Circuit has identified two categories of internet contacts:

> (1) clickwrap agreements, where visitors to the website are required to check an "I agree" box after being presented with the website's terms and conditions of use; and
> (2) browsewrap agreements, where the website's terms and conditions of use are available as a hyperlink at the bottom of the website.

Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175–76 (9th Cir. 2014). Browsewrap agreements are ones where "the user can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." Lopez, 331 F. Supp. 3d at 1098 (internal quotations omitted); see also Regan v. Pinger, No. 20-CV-02221-LHK, 2021 U.S. Dist. LEXIS 33839 at *4 (N.D. Cal. 2021); Wilson v. Huuuge, Inc., 944 F.3d 1212, 1220 (9th Cir. 2019) ("Browsewrap agreements do not require the user to take any affirmative action to assent to the website terms. . . . In some situations, a user may not even know a website has a user agreement.").

Browsewrap agreements are only enforceable contracts when the website owner can show that the website user had actual or constructive notice of the terms and conditions. Regan, 2021 U.S. Dist. LEXIS 33839 at *4. Absent actual notice, a website owner can show constructive notice by showing that: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2)

1  the consumer takes some action, such as clicking a button or checking a box, that
2  unambiguously manifests his or her assent to those terms." Berman v. Freedom Financial
3  Network, LLC, 30 F.4th 849, 856 (9th Cir. 2022).
4       Here, Defendants' website terms of use are a browsewrap agreement. The terms of
5  use are available as a hyperlink at the bottom of Lowes.com, and unlike a clickwrap
6  agreement, do not require visitors to check an "I agree" box. Plaintiff's RJN at 2;
7  see Nguyen v. Barnes & Noble Inc., 763 F.3d at 1175–76 ("Thus, 'by visiting
8  the website—something that the user has already done—the user agrees to the Terms of
9  Use not listed on the site itself but available only by clicking a hyperlink.'") (citation
10 omitted). Therefore, Defendants' terms of use can only be enforceable against Plaintiffs if
11 they had actual or constructive knowledge of the terms of use. See Regan, 2021 U.S. Dist.
12 LEXIS 33839 at *4.
13      While Plaintiffs allege that website users "are informed that they must agree" to the
14 terms of use, and that they have been subjected to the terms of use, such notices do not
15 establish actual or constructive knowledge of the terms of use. See Complaint ¶¶ 5, 11–12.
16 Defendants do not suggest that Plaintiffs had any reason to scroll to the bottom of the
17 webpage or otherwise see the terms of use. Nor do Plaintiffs allege that they saw,
18 understood, or agreed to the terms. Defendants' argument that by simply accessing the
19 Sites, Plaintiffs are "charged" with having seen, understood, or agreed to the terms, fails to
20 establish actual or constructive notice. See id. ¶ 48.
21      Furthermore, courts consistently refuse to enforce agreements where terms are
22 "buried at the bottom of the page or tucked away in obscure corners of the website."
23 Wilson v. Huuuge, Inc., 944 F.3d 1212, 1220–21 (9th Cir. 2019). The court in Wilson
24 cited to instances in which courts declined to enforce agreements where the terms are
25 available only if users scroll to a different screen, Hines v. Overstock.com, Inc., 668 F.
26 Supp. 2d 362, 367 (E.D.N.Y. 2009), or complete a multiple-step process of clicking non-
27 obvious links, Van Tassell v. United Mktg. Grp., 795 F. Supp. 2d 770, 792–93 (N.D. Ill.
28 2011. "Even where the terms are accessible via a conspicuous hyperlink in close

proximity to a button necessary to the function of the website, courts have declined to enforce such agreements." Wilson, 944 F.3d at 1221 (citing Nguyen, 763 F.3d at 1178–79).

The Lowes.com terms of use are just like those that courts have held to be unenforceable. The terms of use are found at the bottom of the Lowes.com homepage, require a user open the page on a different screen, and are accessible via a conspicuous hyperlink. Cf. Byars v. Tire, 654 F. Supp. 3d 1020, 1025–26 (C.D. Cal. 2023) (holding a forum-selection clause unenforceable because plaintiff did not see the terms of use in a hyperlink at the bottom of the website.). Because the Plaintiffs did not have actual or constructive knowledge of the Lowes.com terms of use—which were hidden in a hyperlink at the bottom of the page—the forum-selection clause within is not enforceable. The Court therefore DENIES the motion to transfer.

**2.      12(b)(6) Failure to State a Claim**

**a.      Count One: California Civil Code § 1670.8**

Plaintiffs allege that the non-disparagement clause in Lowe's website terms of use violates California Civil Code Section 1670.8(a)(1) and Section 1670.8(a)(2). Complaint ¶ 6. Defendants move to dismiss for failure to state a claim under both statutory provisions. Mot. at 10, 13.

**i.      Section 1670.8(a)(1)**

California Civil Code § 1670.8(a)(1) states that "[a] contract or proposed contract for the sale or lease of consumer goods or services may not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or its employees or agents, or concerning the goods or services." Id. Because Section 1670.8 applies only to contracts "for the sale or lease of goods or services," id., Defendants argue that it does not apply to the terms of use nor to Defendants' conduct. Mot. at 10–14.

Plaintiffs fail to sufficiently allege that the website terms of use govern their purchases of "consumer goods or services" on Lowes.com. A court in the Central District of California recently came to the same conclusion in a comparable case. In Roldan v.

11

Bank of Am., N.A., Plaintiffs challenged a clause in Bank of America's banking terms of service that prohibited consumers from making negative statements about its goods and services. No. 2:24-CV-00136-SPG-PD, 2024 WL 1430251, at *2 (C.D. Cal. 2024). The court explained:

> As the text of the code makes clear, Section 1670.8 applies only to contracts for the sale or lease of goods or services. Plaintiffs allege that "Plaintiffs and Class members accessed, and/or used, and/or purchased goods or services from Defendants via the Services." (Compl. ¶ 49). This conclusory allegation is not sufficient to overcome Defendant's motion to dismiss. In particular, Defendant notes that Plaintiffs do not allege what "goods or services" were purchased such that the [banking terms of service agreement] covers those purchased "goods or services."

Id. at *4. The court granted the motion to dismiss because Plaintiffs failed to adequately allege that Section 167.80 applied to their action, but granted leave to amend concluding that amendment may not be futile. Id. (citing City of Almaty v. Khrapunov, 956 F.3d 1129, 1131 (9th Cir. 2020)). Similarly, in a case in this District, a plaintiff failed to allege a Section 167.80 violation because he "ha[d] not alleged that Media Matters or Yelp sold or leased him a good or service (both are free services)." Quigley v. Yelp, Inc., No. 17-CV-03771-RS, 2018 WL 7204066, at *2 (N.D. Cal. Jan. 22, 2018). The court then noted that Section 1670.8 "only applies to contracts for 'the sale or lease of consumer goods or services'" and ultimately dismissed the claim. Id.

Here, Plaintiffs allege that they "used or completed sales transactions" on the Lowe's website, or accessed the "Sites," collectively referring to Lowe's advertisements, related services, mobile applications, or any APIs or plugins. Complaint ¶ 1. According to Plaintiffs, the terms of use are part of a contract for the sale or lease of goods and services because they apply to any use of the website, including sales transactions. Opp. at 15–16. But like in Roldan v. Bank of America, Plaintiffs fail to allege that the website terms of use governed their purchases on the website. Rather, they allege that the terms of use govern "regardless of whether users are simply visiting the Sites or are actual purchasers or registered members of the Sites." Complaint ¶ 5. Plaintiffs do not explain why a contract

12

1   that applies regardless of whether a purchase or sale is contemplated is a contract "for the
2   purchase or sale" of goods. To the contrary, Plaintiffs effectively concede that the website
3   is a free service and therefore that their use of the website is not governed by Section
4   1670.8. See id.; Quigley v. Yelp, 2018 WL 7204066, at *2.

5         That Plaintiffs fail to allege a violation of Section 1670.8 is even clearer when
6   comparing Section 1670.8 to other statutes. For example, the federal Consumer Review
7   Fairness Act of 2016 (CRFA) prohibits any use of a "form contract" to ban consumer
8   reviews, defining a form contract as one used by a person "in the course" of selling or
9   leasing goods or services. 15 U.S.C. § 45b(a)(3) (emphasis added).[2] Because terms of
10  services may be used in the course of selling goods or services, the CRFA plausibly
11  prohibits Defendants' alleged conduct here. See Federal Trade Commission, Consumer
12  Review Fairness Act: What Businesses Need to Know (last accessed June 4, 2024),
13  https://www.ftc.gov/business-guidance/resources/consumer-review-fairness-act-what-
14  businesses-need-know (explaining that the CRFA was passed in response to reports that
15  businesses put contract provisions in their online terms and conditions that prevent
16  consumers from posting negative reviews). However, Section 1670.8(a)(1) does not apply
17  to form contracts used in the course of selling or leasing goods or services; it applies only
18  to form contracts for the sale of goods or services. Plaintiffs fail to sufficiently allege that
19  the website terms of use are a contract for the sale of goods or services, and therefore fail
20  to allege that the non-disparagement clause in the terms of use would violate Section
21  1670.8(a)(1).

22        **ii.**    **Section 1670.8(a)(2)**

23        Defendants also move to dismiss Plaintiffs' claim under Section 1670.8(a)(2),
24  which provides that "[i]t shall be unlawful to threaten or to seek to enforce a provision
25  made under this section, or to otherwise penalize a consumer for making any statement

---

[2] Note that the Consumer Review Fairness Act of 2016 does not preempt state laws regarding consumer reviews, including California Civil Code § 1670.8. See 15 U.S.C. § 45b(g).

protected under this section." Id.; see Motion at 13. For the same reason that Plaintiffs fail to allege a violation of Section 1670.8(a)(1), they also fail to allege that Defendants threatened or sought to "enforce a provision made under this section." Id.; see Cal. Civ. Code § 1670.8(a)(2). Plaintiffs rely on the same faulty argument that Defendants' terms of use are a contract for the sale of good or services, concluding that Section 1670.8(a)(2) therefore "makes it 'unlawful' for Defendants to threaten enforcement of the unlawful [terms of service]." Opp. at 19. But, for the reasons described, Plaintiffs fail to plausibly allege that the terms of use are unlawful under Section 1670.8 in the first place.

Because amendment similarly does not appear futile here, the Court gives Plaintiffs leave to amend to plead sufficient facts showing a violation of Section 1670.8(a)(2). See City of Almaty v. Khrapunov, 956 F.3d 1129, 1131 (9th Cir. 2020)).

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' California Civil Code Section 1670.8 claim for failure to state a claim, but grants leave to amend to plausibly allege that the website terms of use is a contract for the sale or lease of goods and services, and that Defendants threatened, or sought to enforce, or otherwise penalized consumers for violating a provision under Section 1670.8.

### b. Count Two: California Business and Professions Code Section 17200

Defendants also move to dismiss Plaintiffs' claim under California Business and Professions Code § 17200 et seq., also known as the "Unfair Competition Law" or "UCL." Mot. at 19. Plaintiffs assert a derivative claim under the UCL based on the Defendant's alleged violation of Section 1670.8. Complaint ¶ 55. Plaintiffs do not address the UCL in their opposition to Defendants' motion to dismiss.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Under the unlawful prong, Section 17200 "borrows" violations of other laws and treats them as unlawful practices that the UCL makes "independently actionable." Aleksick v. 7-Eleven, Inc., 205 Cal. App. 4th 1176, 1185 (2012) (citation omitted). "Virtually any law—federal, state or local—can serve as a

predicate for a [UCL] action." Id. (citation omitted). "When a statutory claim fails, a derivative UCL claim also fails." Id.

Because the Court dismissed the rest of Plaintiffs' claims, the Court also GRANTS dismissal of the UCL claim. The Court does, however, give Plaintiffs leave to amend their UCL claim in light of any amendment to the underlying Section 1670.8 claim.

## VI.  CONCLUSION

The Court DENIES Defendants' motion to dismiss for lack of personal jurisdiction and Defendants' motion to transfer. The Court GRANTS Defendants' motion to dismiss for failure to state a claim with leave to amend. Plaintiffs shall file a First Amended Complaint, if any, within twenty-one (21) calendar days of the issuance of this order.

**IT IS SO ORDERED**.

Dated: June 28, 2024

_____
CHARLES R. BREYER
United States District Judge