**SINGLETON SCHREIBER, LLP**
CHRISTOPHER R. RODRIGUEZ, SB# 212274
    E-Mail: crodriguez@singletonschreiber.com
ANDREW D. BLUTH, SB# 232387
    E-Mail: abluth@singletonschreiber.com
TYSON B. GAMBLE, SB# 266677
    E-Mail: tgamble@singletonschreiber.com
JOHN R. TERNIEDEN, SB# 330343
    E-Mail: jternieden@singletonschreiber.com
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515

**LAW OFFICES OF THOMAS LEARY, APC**
THOMAS A. LEARY, SB# 123792
3023 First Avenue
San Diego, California 92103
Phone: (619) 291-1900

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| OMAR MASRY, an individual; ELLIOT MASS, an individual, on behalf of themselves and all others similarly situated, | No.  3:24-cv-00750-CRB |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| LOWE'S COMPANIES, INC. a North Carolina corporation; LOWE'S HOME CENTERS, LLC, a North Carolina limited liability company; and DOES 1 through 100, inclusive, | **JURY TRIAL DEMANDED** |
| Defendants. | |

1

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Omar Masry, Elliot Mass, Stacey Johnson, Patricia Hoffmeyer, Tracy Harrison, and Laura Willis Albrigo, by and through their undersigned counsel, on their own behalf and on behalf of all other persons similarly situated (residents of California only) (collectively, "Plaintiffs"), sue Lowe's Companies, Inc.; Lowe's Home Centers, LLC (collectively "Lowe's"); and DOES 1 through 100 ("Doe Defendants") (Lowe's and Doe Defendants are collectively referred to herein simply as the "Defendants") and for this Complaint, allege upon information and belief, and based on the investigation to date of their counsel, as follows:

**INTRODUCTION**

1.      This is a class action brought for the benefit and protection of Plaintiffs, and all other similarly situated consumers who are residents of California and who, while residing in California, have visited, used, and actually completed sales transactions through the "www.lowes.com" web page(s) operated by Defendants, including Lowe's profiles on various social media applications linked to and specifically made a part of the "www.lowes.com" website(s) (the "Site" or "Websites", and also referred to herein as "Online Digital Store")  These Websites operate as Online Digital Stores through which Lowe's sells tens of thousands of products directly to consumers, including Plaintiffs and the class members, and which transactions are expressly governed by Lowe's Terms and Conditions of Use ("Terms") as described in more detail below.  In fact, Lowe's Investor Fact Sheet dated January 28, 2022, states: "a typical Lowe's home improvement store stocks approximately 40,000 items, with **over two million additional** items available online and through our Special Order Sales system" (emphasis added):

## MARKET AND COMPETITION

Lowe's is classified within the Building Material and Garden Equipment and Supplies Dealers Subsector (444) of the Retail Trade Sector of the North American Industry Classification System (NAICS).
- The market in which we operate includes home-related sales through a variety of types of businesses. This includes home centers, paint stores, hardware stores, lumber yards and garden centers, mass retailers, home goods specialty stores, and online retailers, as well as wholesalers that provide home-related products and services to homeowners, renters, businesses, and the government.

## PRODUCTS

**We offer a complete line of products for maintenance, repair, remodeling, and decorating, including the following categories:**

| | | | |
|---|---|---|---|
| Appliances | Flooring | Lighting | Rough Plumbing |
| Building Materials | Hardware | Lumber | Seasonal & Outdoor Living |
| Décor | Kitchens & Bath | Millwork | Tools |
| Electrical | Lawn & Garden | Paint | |

A typical Lowe's home improvement store stocks approximately 40,000 items, with over two million additional items available online and through our Special Order Sales system.

## BRANDS

A wide selection of national brand-name merchandise complemented by our selection of private brands, including the following:

| | | |
|---|---|---|
| allen+roth® home décor products | ORIGIN 21™ home décor products | STAINMASTER® carpets |
| Harbor Breeze® ceiling fans | Project Source® high-value project completers | Style Selections® home décor products |
| Holiday Living® seasonal products | Reliabilt® doors, windows, and hardware | Utilitech® electrical and utility product |
| Kobalt® tools | Severe Weather® pressure treated lumber | |
| Moxie® cleaning productss | Sta-Green® lawn and garden products | |

2.      Lowe's proudly boasts that it operates or services nearly 2,220 home improvement and hardware stores, 1,737 of which are in all 50 U.S. states. Lowe's also admits that approximately 19 million customer transactions are served each week. Lowe's launched its first Online Digital Store in 1995 and reached **one billion customer transactions** in 2020:

# INVESTOR FACT SHEET
As of January 28, 2022



### GENERAL
- Fortune® 50 company and the world's second largest home improvement retailer
- Operate or service nearly 2,220 home improvement and hardware stores
  › 1,737 Lowe's Home Improvement stores across 50 U.S. states
  › 234 stores in Canada including 173 corporate-owned stores from RONA acquisition
    » Additionally, we serve 226 dealer-owned stores
- Approximately 208 million square feet of retail selling space
- Approximately 19 million customer transactions served each week
- Employs approximately 200,000 full-time and 140,000 part-time people
- Headquartered in Mooresville, NC
- Lowe's supports the communities it serves through programs focused on creating safe, affordable housing and helping to develop the next generation of skilled trade experts

### HISTORY
- Opened its first store in 1921
- Incorporated in North Carolina in 1952 and publicly held since 1961
- Listed on the New York Stock Exchange - ticker symbol "LOW"
- Reached one million customer transactions in 1964
- Opened first 100,000 square foot store opened in 1990
- Opened first regional distribution center in 1994
- Launched first Lowe's website in 1995
- Fortified presence in Canada with acquisition of RONA in 2016
- Reached one billion customer transactions in 2020

3

Through its Online Digital Store, governed by the Terms, Lowe's offers a variety of products, goods, and services (as depicted above and below), including, as examples, the following: appliances, bathroom products, blinds and window treatments, building supplies, cleaning supplies, doors and windows, electrical products, flooring and rugs, hardware, heating and cooling products, home décor and furniture, kitchen products, lawn, garden and plants, lighting and ceiling fans, molding and millwork, paint, plumbing, smart home and security products, sports and fitness products, storage and organization products, tools, animal and pet care, automotive products, and holiday decorations. Additionally, Lowe's offers various installation services for the products it sells that are provided by its employees and/or agents associated with Lowe's. These various services offered through Lowe's Online Digital Store, and governed by the Terms, are utilized regularly by tens of thousands of individual Californians for personal or household purposes, which products, goods, and services may be purchased and paid for through transactions completed entirely on the Online Digital Stores.



3.    By way of this action, Plaintiffs, on behalf of themselves and all others similarly situated ("Class"), seek civil penalties, injunctive relief, including public

injunctive relief, and other relief necessitated by Defendants' unlawful actions in violation of California Civil Code section 1670.8.

4.      Section 1670.8(c) provides civil penalties for violations of the statute, allowing for enforcement by consumers, the Attorney General, or designated local authorities. The statute emphasizes that these penalties serve a preventive role, aiming to secure compliance with consumer protection laws rather than focusing on compensatory damages.  *See also* CACI No. 3244 ("A civil penalty is an award of money in addition to a plaintiff's damages. The purpose of this civil penalty is to punish a defendant or discourage it from committing violations in the future.")

5.      In 2014, the California Legislature enacted Section 1670.8, recognizing the importance of free consumer speech, and the abuses that consumer-facing corporations imposed to censor such speech.   Section 1670.8 was passed to protect California consumers' right to speak—and, importantly, the California public right to hear such speech.  Since its enactment in 2014, all businesses in California have been on notice for years that all such efforts to silence consumer speech must be removed from consumer contracts or proposed contracts.  Rather than comply, the defiant companies like Defendants continue to include such illegal speech-censoring provisions in their Terms of Service.  Plaintiffs in this action, on behalf of themselves and similarly-situated California consumers, seek to defend and enforce these rights afforded by the California Legislature through Section 1670.8, and hold Defendants accountable for their speech-chilling activities.

6.      Because of the current power of the internet and social media platforms to publicize a company's offerings of goods or services—and the potential harm to corporate interests when negative consumer statements "go viral"—Defendants have a significant incentive to minimize the negative publicity they receive, including in the form of negative online reviews and comments.  Some companies have gone so far as to attempt to prohibit customers and potential customers from making negative statements about the goods or services they offer, to the detriment of consumers,

potential consumers, and the public of the State of California.  Fortunately, California Civil Code section 1670.8 was enacted to protect the right of California consumers to voice their opinions, observations, and experiences about the products and services delivered or offered to California consumers, as well as the citizens of the State of California.  The California Legislature reasonably and correctly determined that such freedom is important to keep the public informed and keep large corporations honest about the quality of the goods or services they offer to consumers.

7.     Section 1670.8(a) provides as follows:

"(1) **A contract or proposed contract** for the sale or lease of consumer goods or services **may not include a provision waiving the consumer's right to make any statement** regarding the seller or lessor or its employees or agents, or concerning the goods or services. (emphasis added).

(2) **It shall be unlawful to  threaten  or seek to enforce a provision made unlawful under this section**, **or to otherwise penalize a consumer for making any statement protected under this section**." (emphasis added).

In addition to the plain language of the statute, California's official Senate Judiciary Committee legislative history specifically establishes that a violation of Civil Code section 1670.8(a)(1) alone is unlawful; and that a violation of Civil Code section 1670.8(a)(2) alone is unlawful --- "[T]he bill would **also** [i.e., in addition to making it unlawful to include an offending provision] make it unlawful for a party to threaten or seek to enforce a provision in violation of the above").  (emphasis added). The "proposed contract" term of 1670.8 underscores that a "proposed contract" with offending terms did not have to be finalized into a final "contract."  The public policy of 1670.8 is to cause companies conducting business in California to refrain from even offering a "proposed contract" with a provision limiting the right of a consumer or potential consumer from making "any statement" regarding the offending company, its employees or agents, or concerning goods or services.  As such, the mere fact that a "proposed contract" had offending terms is sufficient to be a violation

of 1670.8, and as such, threats of enforcement, although such threats are alleged to have been made in this case, are not a necessary element.  The plain language of the statute clearly protects the right of the consumer to make "any statement" --- not just disparaging comments --- without having to ask for permission to do so, or without having the form of "any statement" to be in a format or with content approved by the offending company. To be clear, "any statement" means any statement.

8.    In order to complete a purchase transaction on the Lowe's Online Digital Store, consumers are informed that they must agree to Defendants' Website Terms[1] and are further informed that the Terms "govern Your [the consumer's] use of Lowes.com …. **and related services.**" (emphasis added). *See* **Ex.A**, **Introduction**. Thus, when a consumer purchases a good or service via the Lowe's Online Digital Store, they become bound by the Website Terms of Use.  In fact, Defendants cast their net far and wide to bind consumers or potential consumers by asserting that mere use "of any of the Sites constitutes your unconditional agreement to be bound by these terms and conditions…" *See,* **Ex. A. Your Use of the Site**— regardless of whether users are simply visiting the Website or are actual purchasers of goods or services via transactions completed on the Website (like Plaintiffs here).

9.    While conducting substantial business with California consumers, the Terms Defendants impose upon customers and prospective customers of Lowe's clearly violate Section 1670.8.  Pursuant to the Terms that govern each and every online purchase transaction completed by any consumer on Lowe's Sites, Lowe's requires its customers to agree they will not post any User Content that "defame[s], misrepresent[s], or **contain[s] disparaging remarks about Lowe's Organization** or **its products**, or other people, **products, services**, or companies . . . ." (emphasis

---

[1] Attached to Plaintiffs' First Amended Complaint as **Exhibit A** is a true and correct copy of Defendants' Terms and Conditions of Use. These Terms are the operative Terms at issue and were in effect when Plaintiffs filed suit.  Plaintiffs are informed and believe that after the initial complaint was filed, Lowe's amended certain portions of its Terms.  Plaintiffs are further informed and believe that, as evidenced by its amendments, Lowe's knew that the provisions of its Terms violated Section 1670.8, and thus its violations were willful.

1   added).  As such, the contract or proposed contract governing these product/services

2   purchases prevent consumers from making "any statement" (that Lowe's considers

3   to be disparaging about Lowe's, its products, services, etc.), and is therefore a direct

4   violation of Section 1670.8.

5          10.     One of the Lowe's Online Digital Store "uses" that Defendants promote

6   and encourage is a feature whereby consumers can provide "feedback, reviews, text,

7   ideas, photos, videos, or any other content (all the foregoing referred to herein as

8   "User Content") that you submit through such Content Hub, **as long as** such User

9   Content **meets our requirements as set forth in these User Content Terms."**

10  Defendants' state in their Terms that: "As part of your use of any of Lowe's Home

11  Centers, LLC Sites, as well as pursuant to your participation in or use of any of the

12  other Lowe's Companies, Inc. and its affiliates' (collectively "Lowe's Organization")

13  **social media or other digital platforms** (collectively our "Platforms"), or pursuant

14  to your participation in or response to any other invitations or forums that may be

15  made available or extended to you by or on behalf of Lowe's (collectively "Other

16  Forums")(hereinafter Sites, Platforms and Other Forums shall be collectively

17  referred to as a "Content Hub" or "Content Hubs"), we welcome feedback, reviews,

18  text, ideas, photos, videos, or any other content … as long as such User Content meets

19  our requirements as set forth in these User Content Terms."  Lowe's further threatens

20  to suspend or terminate any user's right to use the Sites, at Lowe's sole and absolute

21  discretion, if the user makes any statement that Lowe's deems disparaging. One of

22  the ways that consumers can submit information to Defendants is through the

23  Platforms on its Websites. Consumers may use certain social media profiles

24  maintained by Defendants (i.e., Lowe's company profiles on Facebook, X,

25  Instagram, LinkedIn, and YouTube), which are made accessible to consumers

26  through direct links on the Lowe's Sites to those Lowe's profiles.  By simply clicking

27  on these links to the Lowe's social media profiles, consumers can submit information

28  and feedback to Defendants through these public forums ("Content Hubs").  In fact,

Defendants encourage consumers to use the Lowe's Online Digital Store to submit information in this manner. However, Lowe's makes clear that any such content— including consumers' use of the linked social media sites ("Content Hubs") is expressly subject to the Terms—including the unlawful provisions that prevent consumer statements about Lowe's—such that consumers must agree not to make disparaging and other statements about Lowe's when providing this feedback.

11. The Terms also threaten to suspend or terminate any user's right to use the Sites, at Lowe's sole and absolute discretion, if the user makes any statement that Lowe's deems "harmful to Lowe's interests."

12. Defendants' conduct is unlawful, including among other reasons, because it is aimed to stifle California consumers' right to free speech, and the right of the California public to hear lawful discourse. Defendants' strong-arm tactics to silence injured parties were and continue to be intentionally exercised to protect Defendants' self-promoting public image for commercial and other benefits. Defendants' unlawful business practices, purposefully designed to maintain and increase their consumers and prop up their stock price, all while denying public, consumers, and potential consumers accurate information so that they may make informed decisions as consumers.

13. By way of these provisions, Defendants seek to have users waive their right as consumers to make negative statements regarding Lowe's or its employees, agents, products or services, and further threatens to take action against consumers for making such states, by "disabling" their access to the Sites. These unlawful restrictions—imposed by Defendants against their own customers and prospective customers—is an important component of Lowe's business strategy, which relies upon the popularity of their product offerings nationwide to generate significant revenues and profits. But Defendants' efforts to silence their customers and prospective customers is clearly prohibited by California law, thereby subjecting Defendants to significant penalties, as described herein.

1

## JURISDICTION AND VENUE

2      14.    This action was originally filed in the Superior Court of California for

3  the County of Alameda because that court has jurisdiction over the claims and causes

4  of action asserted herein because such claims arise solely and specifically out of

5  Defendants' unlawful practices within the State of California, and relate to at least

6  one statute—California Civil Code section 1670.8—that was designed to protect

7  California's citizens, the application of which is exclusively a matter for the courts

8  of this State.  Defendant thereafter removed this action to the United States District

9  Court for the Northern District of California.  This Court permitted the filing of this

10  First Amended Complaint.  Plaintiffs reserve all arguments regarding the propriety

11  of this Court's jurisdiction, including Article III jurisdiction, which this Court

12  determined was not present in a similar case involving Section 1670.8 because

13  Defendants did not meet their burden when removing the action to demonstrate

14  Article III standing.  *See Pulbrook, et al. v. Nationwide Mutual Insurance Company*,

15  Case No. 3:24-cv-00469-MMC (N.D. Ca., ECF No. 36).

16      15.    Beyond the express terms of Section 1670.8, venue is proper in

17  California State Court because: Defendants transact business in California and in the

18  County of Alameda based on Plaintiffs' use of the Sites in this County; Defendants

19  have committed unlawful acts in the County by and through the Sites and associated

20  business transactions within the County; and a substantial part of the events giving

21  rise to the claims alleged herein occurred in this County, where at least one of the

22  Plaintiffs resides. Additionally, on the issue of a public injunction to protect the right

23  of all Californians' right to hear the comments of consumers making statements about

24  Defendants' goods or services, as well as the right of California consumers to make

25  any such statement, per California Civil Code section 1670.8 (which includes an

26  express intent to protect "public policy" interests), comity and related legal

27  authorities require that the venue of the Court be situated in the State of California

28  only.

## THE PARTIES

16.    At all relevant times, Plaintiff Omar Masry was and has been a citizen of the State of California and a resident of Alameda County. Plaintiff Masry visited and used Defendants' website, www.lowes.com, to complete at least one sales transaction with Lowe's, within the applicable statute of limitations in Alameda County in the State of California.

17.    At all relevant times, Plaintiff Elliot Mass was and has been a citizen of the State of California. Plaintiff Mass visited and used Defendants' website, www.lowes.com, to complete at least one sales transaction with Lowe's, within the applicable statute of limitations in the State of California.

18.    At all relevant times, Plaintiff Stacey Johnson was and has been a citizen of the State of California. Plaintiff Mass visited and used Defendants' website, www.lowes.com, to complete at least one sales transaction with Lowe's, within the applicable statute of limitations in the State of California.

19.    At all relevant times, Plaintiff Patricia Hoffmeyer was and has been a citizen of the State of California. Plaintiff Mass visited and used Defendants' website, www.lowes.com, to complete at least one sales transaction with Lowe's, within the applicable statute of limitations in the State of California.

20.    At all relevant times, Plaintiff Tracy Harrison was and has been a citizen of the State of California. Plaintiff Mass visited and used Defendants' website, www.lowes.com, to complete at least one sales transaction with Lowe's, within the applicable statute of limitations in the State of California.

21.    At all relevant times, Plaintiff Laura Willis Albrigo was and has been a citizen of the State of California. Plaintiff Mass visited and used Defendants' website, www.lowes.com, to complete at least one sales transaction with Lowe's, within the applicable statute of limitations in the State of California.

22.    Upon information and belief, Defendants are comprised of affiliated corporate entities, each of which conducts business in the state of California with

California citizens. These entities, individually or collectively, through an integrated corporate structure (the details of which Plaintiffs are presently unaware), develop, market, and sell a wide variety of home improvement goods or services.  Defendants operate in California and generate sales through the Sites.

23.    The true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of the Doe Defendants, inclusive, and each of them, are unknown to Plaintiffs at this time, who therefore sues said Doe Defendants by such fictitious names.  Plaintiffs are informed and believe, and thereon allege, that each defendant designated herein as a Doe Defendant caused injuries and damages proximately thereby to Plaintiffs as hereafter alleged, and that each Doe Defendant is liable to Plaintiffs for the acts and omissions alleged herein below, and the resulting injuries to Plaintiffs, and damages sustained by Plaintiffs.  Plaintiffs will amend this Complaint to allege the true names and capacities of said Doe Defendants when that same is ascertained.

## **FACTS COMMON TO ALL CLASS MEMBERS**

24.    At all relevant times, Defendants were and currently are in the business of advertising, promoting, marketing, selling, and distributing consumer goods or services through the Sites, all of which are targeted to, and accessible by, the citizenry of California.

25.    Defendants are well-aware that their public image is vital to maintaining and gaining customers.  If the public sees content posted by users that may be insulting to Defendants, and/or any of their partners, and/or any their employees, and/or concerning any of their goods or services, then their current customers and/or prospective customers may shift to a competitor, ultimately resulting in loss of business and loss of revenue.

23.    Thus, in order to maintain a positive public image, Defendants have engaged in an intentional business strategy to silence each and every customer or potential customer who visits their Sites by purporting to bind those California consumers to

the Terms – immediately upon accessing the Lowe's Online Digital Store, with Lowe's casting the breadth of its Terms as far and wide as possible to bind as many consumers/potential consumers as possible when viewing webpages within or through the www.lowes.com Lowe's Online Digital Store.

26.    Specifically, Defendants' Terms provide that by using the Sites, users agree that they will not post any content that "defame[s], misrepresent[s], or contain[s] disparaging remarks about Lowe's Organization or its products, or other people, products, services, or companies . . . ." The relevant Terms are dictated to all Lowe's consumers using the Lowe's Online Digital Store, and in order for a consumer to purchase a good or service from the Site(s), they must click a box expressly confirming that they agree to be bound by Lowe's Terms. In other words, consumers cannot make an online purchase of a good or service on Lowe's website without expressly agreeing to be bound by a contract with Lowe's Terms.

27.    Lowe's Terms, moreover, threaten to suspend or terminate any user's right to use the Sites, at Lowe's sole and absolute discretion, if the user makes any statement that Lowe's deems "harmful to Lowe's interests."

28.    Lowe's forbids any California consumers, or potential California consumers, who have visited or used the Website, or are even considering purchasing services or products from Lowe's through its Website, from making any statements that would "defame[s], misrepresent[s], or contain[s] disparaging remarks about Lowe's Organization or its products, or other people, products, services, or companies . . . ."

29.    In doing so, Lowe's has and continues to engage in conduct that violates California Civil Code section 1670.8.

30.    To state what is obvious, when making "any statement", consumers are entitled to communicate to the California public by using images, logos, and brand names to make powerful statements to the California public, including a basic statement that a certain company or product is disliked:

1
2
3
4
5
6
7
8
9
10
11
12
13



14    31.    Each of the Plaintiffs specifically identified herein, and millions more

15  similarly situated persons in the State of California, have visited the Sites—either as

16  consumers or potential consumers—and thus have ostensibly been subjected to the

17  unlawful Terms.

18                      **CLASS ACTION ALLEGATIONS**

19    32.    Pursuant to California Code of Civil Procedure section 382, Plaintiffs

20  bring this class action on their own behalf and on behalf of all other similarly situated

21  consumers in California.  The proposed class is defined as follows:

22    a.    During the fullest period allowed by law, all persons residing in

23   California who completed at least one sales transaction with Defendants via the Sites

24   (the "Class").

25    33.    Like Plaintiffs, all Class members are California residents who

26  completed at least one sales transaction with Defendants via the Sites and who were

27  thus subject to the Terms that limit their right as consumers to make statements

28  regarding Defendants or any of their employees or agents, or concerning any

14

products, goods, or services offered by Defendants.

34.    Excluded from the Class are assigned judges and members of their families within the first degree of consanguinity; Defendants; and Defendants' subsidiaries, affiliates, officers, and directors.

35.    The requirements of Code of Civil Procedure section 382 are satisfied for the proposed Class.

36.    The proposed Class is so numerous that individual joinder of all the members is impracticable because members of the Class number in the tens or hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but are objectively ascertainable and will be determined through appropriate discovery and other readily available means.

37.    Defendants possess objective evidence as to the identity of each Class member and, to a reasonable degree of certainty, the harm suffered by each Class member, including without limitation web traffic data evidencing visits to the Sites, sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, and other evidence which objectively identifies class members.

38.    Class members may be notified of the pendency of this action by mail, publication and/or through the records of Defendants.

39.    There are common questions of law and fact affecting Plaintiffs and Class members. Common legal and factual questions include, but are not limited to:

a. Whether each imposition of Defendants' Terms upon members of the Class constitutes a violation of the provisions of California Civil Code section 1670.8 and, if so, whether each such violation is a "willful, intentional, or reckless" violation;

b. Whether Defendants' Terms are unlawful, contrary to public policy, void and/or unenforceable;

c. Whether Class members are entitled to civil penalties;

d. Whether the Class is entitled to recover attorney's fees;

e. Whether, as a result of Defendants' misconduct alleged herein, Plaintiffs and Class members are entitled to injunctive and/or public injunctive relief, and if so, the nature of such relief.

40.    Plaintiffs' claims are typical of the claims of the proposed Class because the rights of Plaintiffs and Class members were violated in the same manner by the same conduct.

41.    Plaintiffs and Class members are all entitled to recover statutory penalties and other relief arising out of Defendants' violations of statutory law alleged herein.

42.    Plaintiffs will fairly and adequately represent and protect the interests of the Class.

43.    Plaintiffs' interests do not conflict with the interests of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in prosecuting class actions, and Plaintiffs intend to vigorously prosecute this action.

44.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.

45.    Given the relative value of statutory penalties available to any of the individual Class members, individual litigation is not practicable.

46.    Individual Class members will not wish to undertake the burden and expense of individual cases.

47.    In addition, individualized litigation increases the delay and expense to all parties and multiplied the burden on the judicial system.  Individualized ligation also presents the potential for inconsistent or contradictory judgments.

48.    In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

49.    Questions of law and fact common to all Class members predominate over any questions affecting only individual Class members. Injuries sustained by

Plaintiffs and Class members flow, in each instance, from a common nucleus of operative facts as set forth above.

50.    In each case, Defendants' actions caused harm to all Class members as a result of such conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

51.    Proposed Class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the Class and should be appointed lead counsel for the Class.

## COUNT I— VIOLATION OF CIVIL CODE SECTION 1670.8

52.    Plaintiffs re-allege and incorporate by reference all other Paragraphs of their Complaint.  Plaintiffs assert this cause of action on behalf of themselves and all other similarly situated persons residing in California who used the Sites to complete transactions with the Defendants.

53.    Defendants are in the business of promoting, selling, and/or leasing consumer goods or services. The Lowe's Online Digital Store website, www.Lowes.com,  contains a specific tab (Shop) that consumers can click to access, purchase, and/or lease various products and services:



Lowe's consumers can and do use credit cards to make purchases of a vast variety of goods or services directly through the Lowe's Sites. For example, if consumers wished to purchase goods such as a portable fan on Lowe's Site, they first need to type what they are looking for, or click on the shop tab:



Upon clicking or searching for a product on Lowe's Site, such as a fan, users are provided a list—all within the lowes.com Site that lists hundreds of fans available for sale:



To purchase or lease a product, good, or service from Lowe's Site, consumers need only click the "Add to Cart" tab associated with the product, good, or service. Once consumers click that tab, they may start the secure checkout process to purchase the product, good, or service:



Once consumers click the "Start Secure Checkout" tab, they are directed to the page within the lowes.com Site ([www.lowes.com/checkout](www.lowes.com/checkout)), all governed by the Terms, where they begin the checkout process. Consumers are asked to provide their contact information, such as their email address and phone number. Consumers are also asked to enter their pickup details. Finally, consumers need to scroll down to enter their payment information:

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT



When consumers scroll down on the webpage, www.lowes.com/checkout, they (1) select their payment method and enter their card information; (2) enter their billing information in the corresponding fields; (3) click on the "Terms" hyperlink to review before completing the purchase; and (4) click "Place Order" to purchase. Importantly, when users place their order, they agree again to be bound by the "Terms" contract with Lowe's. **The "Terms" agreement is necessary to purchase any good or service through the Lowe's Site**. The same "Terms" that apply when a consumer enters Lowe's Site is the same "Terms" that referenced by Lowe's when a client purchases a product:



After consumers click the "Place Order" tab and agree to be bound by the Terms again, they are sent an email and receive confirmation of the order from Lowe's:





PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Thus, a contract for the sale or lease of a consumer goods or services is entered into, and that contract contains the unlawful language identified in paragraph 9 of this Complaint. The Terms, located throughout the Lowe's Sites, including on pages where sales transactions are completed, require consumers to waive their rights to make statements about Defendants that "defame[s], misrepresent[s], or **contain[s] disparaging remarks about Lowe's Organization** or **its products**, or other people, **products, services**, or companies . . . ." (emphasis added). Lowe's Terms further threaten to suspend or terminate any user's right to use the Sites, at Lowe's sole and absolute discretion, if the user makes any statement that Lowe's deems "harmful to Lowe's interests."

54.    Plaintiffs and Class members are all "consumers" under Section 1670.8 because they allege they purchased, leased, and/or used goods or services for personal, family, or household use with no intention of resale.

55.    The Lowe's Online Digital Store website, including the www.lowes.com landing page advertises and offers for sale various products and services. Plaintiffs and other California consumers similarly situated, arrive at the www.lowes.com page, explore the products and services advertised and offered for sale there, and purchase products directly through the Site, becoming bound by the Terms.

56.    By the Terms themselves, Defendants purport to have charged Plaintiffs and Class members with having read, understood, and agreed to be bound by the Terms.

57.    Plaintiffs and Class members purchased goods or services from Defendants via the Website.

58.    Pursuant to the operative Terms on the Lowe's Site, attached hereto as **Exhibit A**, Defendants mandate that Plaintiffs and the Class members that make purchases through the Lowe's Sites agree they will not post any User Content to the Sites that "defame[s], misrepresent[s], or **contain[s] disparaging remarks about**

**Lowe's Organization** or **its products**, or other people, **products, services**, or companies . . . ." (emphasis added):

### Defendants' Operative Terms When Complaint Was Filed:



59.    By way of this restriction, Defendants intentionally, willfully, or recklessly seek to have Plaintiffs and the Class members waive their right as consumers to make statements regarding Defendants or their employees, vendors, partners, agents, and goods or services, which restriction is prohibited under California Civil Code 1670.8 and is contrary to public policy.

60.    Defendants have repeatedly violated California Civil Code 1670.8 in relation to each of the Plaintiffs and Class members and their respective interactions with the Website.

61.    Plaintiffs and Class members are also entitled to civil penalties for Defendants' violations of Civil Code 1670.8.

62.    Plaintiffs and Class members are entitled to injunctive relief, including public injunctive relief.

### **PRAYERS FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the putative Class members, pray for judgment as follows:

a. Determining that this action is a proper class action and certifying the Class, as defined herein;

b. Appointing Plaintiffs as Class representatives;

c. Appointing the undersigned as Class counsel;

d. Finding Defendants liable to Plaintiffs and Class members for civil penalties in such amount(s) as the Court or Jury may determine;

e. Awarding statutorily provided civil penalties to Plaintiffs and Class members as appropriate; h. Awarding pre-and post-judgment interest;

f. Awarding injunctive relief, including public injunctive relief, as claimed herein or as the Court may deem proper;

g. Awarding Plaintiffs and Class members attorney fees and all litigation costs as allowed by law; and

h. Awarding such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  July 19, 2024                                  SINGLETON SCHREIBER, LLP


By: */s/ Andrew D. Bluth*
Andrew D. Bluth

1

## CERTIFICATE OF SERVICE

I, Andrew D. Bluth, hereby certify that on July 19, 2024, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.


*/s/ Andrew D. Bluth*
Andrew D. Bluth